### LUCAS v. McFARLAND.

(Court of Civil Appeals of Texas. Amarillo. April 28, 1913.)

PUBLIC LANDS (§ 175*)—LOCATION—SURVEY—REJECTION BY LAND OFFICE—EVIDENCE.

Evidence *held* to require a finding that a survey was improperly located, and that a ruling of the land office rejecting it for that reason was proper.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 555-570; Dec. Dig. § 175.*]

Appeal from District Court, Hemphill County; F. P. Greever, Judge.

Action between George B. Lucas and George B. McFarland. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

B. M. Baker and Willis & Willis, all of Canadian, and Geo. S. Walton, of Austin, for appellant. R. E. Taylor and W. T. Allen, both of Henrietta, for appellee.

HENDRICKS, J. The above cause, resolved into a boundary suit, involves the position of survey No. 21, Day Land & Cattle Company certificate, claimed by the appellant, Lucas, and school section No. 6, in block M—24, in Hutchinson county, Tex., claimed by the appellee, McFarland. The same principle of law announced in the case of Howard B. Crosby et al. v. N. A. Stevenson et al. (case No. 410) 156 S. W. 1110, decided at this term, involving the same question of boundary (a part of the same land in both suits being the same), control the disposition of this cause, except that the matter of agreed boundary arising as an issue in the Crosby Case does not arise here.

This cause was decided upon this record prior to the decision of the other cause, although practically submitted with the other cause, on account of the identity of the boundary questions involved. In case No. 410—the Crosby-Stevenson Case—we find the history of the matter much more extended, and the facts, direct and collateral, much more voluminous, clarifying the issues involved, and with reference to some of the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

field notes much more satisfactory; but in this record the evidence sharply and properly raises the questions of the conflict of boundary between the Day Land & Cattle Company certificate and the school section No. 6 in M—24, as was raised in the Crosby Case, and whether McLean, the surveyor who surveyed M—24, by beginning at the northwest corner of survey No. 135 in block 5—T, for section No. 1 of M—24, ever got anywhere for that beginning. Whatever theory the resurvey of M—24 in 1908 by Surveyor W. D. Twichell was based upon, it is clearly apparent that said surveyor in reconstructing M—24 and displacing it from the headrights and in reality tearing it from M—23 on the southeast, there is an assumption, whether intended or not, that McLean in the original survey of M—24, in his beginning in 1881, was at the same place Mr. Twichell began in 1908 for the purpose of his resurvey. M—23, with its beginning survey, indirectly ties to 5—T and directly ties to R—2, evidenced by this record; and the effect of R. H. Spiller's testimony is that M—24 is tied to the southern work, and also tied to the Walters and Bason headrights, and the effect of other testimony is that M—24 is tied to other headrights, as well as calling for 5—T, and the strength of this testimony is that Mr. Twichell surveyed section 49 in M—23 "in accordance with the southern lines of calls" (which was evidently a resurvey) and the maps show 50 in block M—23 is tied to the Bason; and while Mr. Twichell does say "that it is not a fact that the intervening surveys tie on to each other so on south down to the cottonwood tree," which Surveyor H. B. Spiller speaks of in this record; however, he also says that he supposes a line of surveys could be traced through the headrights by the surveys from the original ones from section 4 (meaning in M—24), and, if you trace them down to the cottonwood tree on the river and leave them there, the excess will be created if the calls were not broken, and if you break the calls there would be a vacancy. The land office breaks the calls of M—24 from 5—T, maintaining it with the southern work and with the headrights, and Mr. Twichell (while we suppose the contention is that he did not break anything, because he began at the beginning all of No. 1 in M—24, following them out by course and distance) in reality broke the calls of M—24, tearing it from the Bason and Walters and the headrights and logically displacing it from M—23, with reference to which latter survey his own work at another time suggests is tied to the southern work; and this break is made by the appellee assuming that Twichell's work, following the Gray work in 1890, and McLean's work, coincide as to the beginning corner when the latter constructed M—24 from said beginning call (if he constructed it from any

call), which is the purest conjecture in this cause; this record is convincing that no one knew where the northwest corner of 5—T was situated, the beginning of M—24, until 5—T was actually surveyed from the Coldwater in Hansford county by Gray in 1890, who put up monuments, from which that corner could be easily ascertained by course and distance, which was done by Twichell. By the same logic you could tear M—23 from the Bason and the Price, if it should happen to be tied to the Price by its calls, and move the whole thing to 5—T and R—2. We believe the land office was correct in rejecting such a survey.

It having been shown in this record without any contradiction that the field notes of survey 21 of appellant Lucas, in his amended petition, are in harmony with the survey made by that certificate, in connection with the Gray work in 1890, when tied to M—24 and R—2, and then located on the ground upon the vacancy, when the land office held M—24 to the headrights in the southern work, this cause is reversed and rendered for the appellant against the appellee for the lands described in his said second amended original petition.

Reversed and rendered.